**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| NICOLE M. DELALLA, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| HANOVER INSURANCE, et al. | : | NO. 10-858 |

**MEMORANDUM RE: PLAINTIFFS' MOTION FOR RECUSAL AND PLAINTIFFS'**
**FAILURE TO FILE AN AMENDED COMPLAINT AS ORDERED**

**Baylson, J.**                                                                                            **August 17, 2010**

Defendants Joseph Oberlies and his law firm Webber Conner & Oberlies ("the law firm Defendants") filed a Motion to Dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), and Defendant Hanover Insurance ("Hanover") filed a Motion for Judgment on the Pleadings and/or for Summary Judgment. Oral argument regarding these Motions was held on May 24, 2010, at the conclusion of which the Court issued the Order dated May 26, 2010 (Doc. No. 10) requiring Plaintiffs to file an amended complaint, and briefly stating the reasons for that requirement.

Plaintiffs did not file an amended complaint within the deadline, or since. However, on July 2, 2010, Plaintiffs filed a Motion for Recusal of the undersigned, together with an affidavit. (Doc. No. 14). This Memorandum will discuss reasons for denying the Motion for Recusal, and Plaintiffs will be ordered to show cause why the case should not be dismissed with prejudice in view of their failure to file an amended complaint.

**I.    Facts and Procedural History**

The present dispute arises out of prior litigation between Plaintiffs and a third party named Product Partners; the parties refer to this prior litigation as "the underlying action." In the underlying action, Product Partners sued Plaintiffs in the Eastern District of Pennsylvania for trademark infringement, unjust enrichment, and unfair competition. Plaintiffs' insurance provider, Hanover Insurance, appointed Joseph Oberlies to represent Plaintiffs. Ultimately, a settlement between Plaintiffs and Product Partners was reach on February 4, 2005, and the case was dismissed with prejudice on February 11, 2005.

Plaintiffs' Complaint, filed on March 30, 2009 in New Jersey state court, alleges that Defendants breached their obligations to Plaintiffs by entering into an agreement to settle the underlying action. (Compl ¶¶ 14, 23.) As a result of entering into this settlement agreement, Plaintiffs had to terminate the use of the disputed trademark and consequently went out of business. (Compl. ¶ 16.) Accordingly, Plaintiffs have raised the following claims: (1) "bad faith against Hanover"; (2) "breach of contract against Hanover"; (3) "tort claim against the law firm defendants"; and (4) "contract claim against the law firm defendants." (Compl. ¶¶ 18–30.) Defendants removed the case to federal court on the basis of diversity jurisdiction, and the Honorable Robert B. Kugler of the District of New Jersey granted Defendants' Motion for Transfer of Venue to this Court.

The law firm Defendants filed a Motion to Dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), and Hanover filed an Answer, followed by a Motion for Judgment on the Pleadings and/or Summary judgment pursuant to Federal Rules of Civil Procedure 12(c) and 56(c). Oral argument on the merits of these motions was held on May 24, 2010, at the conclusion of which the Court issued the order dated May 26, 2010, requiring

Plaintiffs to file an amended complaint. The oral argument was spirited and marked by the vigorous contentions of Plaintiffs and Defendants. As the transcript of the hearing shows, the Court made numerous remarks indicating a refusal to dismiss the Complaint when dismissal was repeatedly requested by Defendants, and at the same time, posed hard questions to Plaintiffs' counsel and found that the nature of the allegations by Plaintiffs would require an amended complaint for various reasons.

Per the terms of the Order, Plaintiffs were required to file an amended complaint within thirty days. As that date approached, Plaintiffs requested an extension of one week to file their amended complaint, which the Court permitted over Defendants' opposition. Plaintiffs did not file an amended complaint within the extended deadline, or since. However, on July 2, 2010, Plaintiffs filed a Motion for Recusal of the undersigned, together with an affidavit of Plaintiff Paul DeLalla of NMD Marketing, Inc. (Doc. No. 14.) Defendants filed responses in opposition to this Motion. (Doc Nos. 15, 17.)

## II.     Plaintiffs' Motion for Recusal

Plaintiffs' Motion for Recusal is filed pursuant to 28 U.S.C. § 455 and asserts that the undersigned has a "fixed view" of the case and cannot objectively and impartially preside over the case. Plaintiffs' affidavit, in the view of the undersigned, is not an accurate representation of what took place at the oral argument and fails to establish any reasonable question of the undersigned's impartiality.

### A.     May 24, 2010 Oral Argument

Plaintiffs' articulated bases for recusal all stem from oral argument held on May 24, 2010 regarding Defendants' Motions to Dismiss, and for Judgment on the Pleadings and/or for

Summary Judgment.  At the hearing, the Court asked Plaintiffs' counsel, Michael Kimm, Esquire, about the Settlement Agreement that Plaintiff Paul DeLalla had signed to resolve the underlying action in 2005. (Tr. 15-18, May 24, 2010.)  The Court specifically focused on Paragraph V(a) of the Settlement Agreement, which states that "[e]ach of the parties hereto has received independent legal advice from attorneys of its or his own choice with respect to the advisability in making the settlement provided for herein."  (Tr. 15:15-19.)  The Court asked Mr. Kimm who Mr. DeLalla's independent attorney was when Mr. DeLalla signed the Settlement Agreement in 2005, and whether the independent attorney was in fact Mr. Kimm (Tr. 15:24-25), since Mr. Kimm had previously stated that he was Mr. DeLalla's "personal lawyer" in 2005 (Tr. 13:15-17).  Mr. Kimm admitted that Mr. DeLalla did sign the Settlement Agreement (Tr. 16:9-11), but denied "any involvement in giving [Mr. DeLalla] any advice" (Tr. 16:16-18), and contended that he believed there was no independent attorney present for Mr. DeLalla at the settlement stage of the underlying action (Tr. 16:21-24).  The Court pressed for an answer by asking, "Then why did he sign this? . . . [Y]our client wanted to settle this.  That's why he signed this agreement" (Tr. 17:1, 18:10-11), and later, "I'll tell you, Mr. Kimm, something I believe in, and that's holding people to documents they sign, okay?  So your client signed the document.  If he wants to try and get around it, he'd better have very good reasons why that document is not binding on him" (Tr. 30:20-24).  Mr. Kimm contended that Mr. DeLalla signed the Settlement Agreement "[b]ecause he was told to," and that "he was coerced into doing that" (Tr. 17:2, 18:12.)  The Court pointedly asked if Plaintiffs were specifically alleging fraud.  (Tr. 17:5-6.)  Mr. Kimm responded, "I think we did, Judge."  (Tr. 17:7.)  The Court responded, "You did – not in your complaint.  You alleged it in your brief but not in your complaint."  (Tr. 17:8-9.)

The Court noted its concern that, without detailed facts and a specific allegation of fraud in the actual Complaint, Mr. Kimm's Complaint was "simply not plausible," (Tr. 18:23-25, 19:1-24), alluding to the "plausibility standard" of pleading under Twombly and Iqbal.[1]  The Court noted Plaintiffs' failure to assert any reasons, facts or motive for his insurance company and his attorney to conspire to deny Plaintiffs' representation or cause them injury.  (Tr. 18:25-19:22.)  The Court noted that "[Mr. Kimm] said a number of things there [in the Complaint] which are just inconsistent with his allegations here [at oral argument]."  (Tr. 23:12-13.)  The Court advised Mr. Kimm, "This is one of those cases . . . where a notice pleading is not going to work and you're going to have to file detailed allegations,"  (Tr. 26:24-27:3) and, "you're going to have to detail all these allegations about coercion and about the circumstances of signing this." (Tr. 19:14-16.)

    To give Plaintiffs a chance to remedy the inconsistencies between the Complaint and Mr. Kimm's statements at oral argument, to allow Plaintiffs to allege facts supporting the conclusory allegations, and to allow Plaintiffs to allege fraud properly under Federal Rule of Civil Procedure 9(b), the Court ordered Plaintiffs to file a detailed amended complaint specifically explaining a motive for Defendants to conspire together against Plaintiffs.  (Tr. 19.)  The Court explained further:

> "[I]t may be that Mr. DeLalla has a valid claim.  I'm not passing on the validity of his claim.  I just procedurally, I don't like – I can't let this complaint go forward the way it's written in view of the settlement agreement.
>     . . . .

---

[1] The Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009) standards of plausibility in pleading are discussed in the "Disposition of the Complaint" section, infra.

I'm not – I mean, I'm not going to pass judgment on the substance of the claims, except to note that the way they are now, they're implausible. And I think you're going to have to have a theory of this case as to how your client could sign that, and if you want to allege fraud you can but you'd better be prepared to back it up or . . . or you may be facing Rule 11 motions, Mr. Kimm. All right? You've got to take this very seriously. Because you were – from the correspondence that I saw, you were very much involved here. . . . I just want to tell you that the way I look at this, you are likely to be a witness if this case went to trial. And if that's the case, then you can't be the lawyer. So I'm just warning you that you ought to give very serious ethic consideration to whether you should have another – whether another lawyer should represent Mr. DeLalla as attorney of record in this case."

(Tr. 27:20-24, 28:14-29:14.)

Defense counsel protested allowing Plaintiffs to file an amended complaint, stating, "I see no point in giving these plaintiffs another opportunity . . . . I think the Court conceptually could resolve the issues raised." (Tr. 21:7-8, 22:5-6.) The Court responded, "No, I can't do that. I – I'm not going to do that. . . . He states a claim." (Tr. 22:7-9, 23:1.) When defense counsel continued to press for dismissal, saying, "[t]here's no claim" (Tr. 23:2), the Court replied that "the bald allegations of his complaint state a claim. State a claim for malpractice, state a claim for contract. . . . Look, I understand why you want to shortcut this, but I don't think I can do that" (Tr. 23:3-4, 27:17-18). The Court refused Defendants' repeated requests that the Complaint be dismissed (Tr. 21-33), and stated repeatedly that the Court had to assume the Plaintiffs' allegations were true (Tr. 21:15-16, 23:15-16) and could not grant Defendants' motions without allowing Plaintiffs to have discovery (Tr. 21:19-20, 22:18-19, 33:4-7).

Instead of dismissing the case as Defendants repeatedly requested, the Court resolved the oral argument by denying the Defendants' motions without prejudice, ordering Plaintiffs to file an amended complaint within thirty days, and allowing Defendants to renew their motions by praecipe thereafter. (Tr. 33:19-23.)

## B.  Legal Standard

Under 28 U.S.C. § 455(a), a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  More specifically, if a reasonable observer aware of all the circumstances "would harbor doubts about the judge's impartiality . . . , then the judge must recuse."  Selkridge v. United of Omaha Life Ins. Co., 360 F.3d 155, 167 (3d Cir. 2004) (quoting In re Prudential Ins. Co. of Am. Sales Practices Litig., 148 F.3d 283, 343 (3d Cir. 1998)).  In addition, § 455(b)(1) provides that a judge shall recuse "[w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding."  Under § 455, the Court "need not accept the [m]ovant's allegations as true" and is free to counter them "with facts derived from the judge's knowledge and the record."  Cooney v. Booth, 262 F. Supp. 2d 494, 504 (E.D. Pa. 2003) (Robreno, J.), aff'd, 108 F. App'x 739 (3d Cir. 2004) (nonprecedential); see also In re Martinez-Catala, 129 F.3d 213, 220 (1st Cir. 1997) ("To the extent that facts are in dispute, factual determinations are made by the judge whose recusal is in question . . . ."); United States v. Sciarra, 851 F.2d 621, 625 n.12 (3d Cir. 1988) ("There is considerable authority for the proposition that the factual accuracy of affidavits submitted pursuant to 28 U.S.C. § 455 may be scrutinized by the court deciding the motion for recusal."); United States v. Greenough, 782 F.2d 1556, 1558 (11th Cir. 1986) ("Section 455 does not require the judge to accept all allegations by the moving party as true."); 13D Charles Alan Wright et al., Federal Practice and Procedure § 3550 (3d ed. 2010) ("If a party does move for disqualification under § 455, and the motion is supported by an affidavit . . . , the court is not required to accept the factual statements as true.").

In order to have a valid claim for disqualification under § 455, the alleged bias must be from an extrajudicial source – i.e., the result of the judge's non-judicial conduct – or fall within the pervasive bias exception to the extrajudicial source doctrine – i.e., bias "so extreme as to display clear inability to render fair judgment." Liteky v. United States, 510 U.S. 540, 549-54 (1994). Third Circuit law follows Liteky by generally requiring a party seeking recusal of a judge under §§ 455(a) or (b)(1) to cite an extrajudicial factor; a party usually cannot simply rely on beliefs or opinions formed by the judge during argument or other judicial proceedings involving the merits of the case. See Selkridge, 360 F.3d at 167 ("Generally, beliefs or opinions which merit recusal must involve an extrajudicial factor." (quoting United States v. Antar, 53 F.3d 568, 574 (3d Cir. 1995))); Securacomm Consulting, Inc. v. Securacom Inc., 224 F.3d 273, 278 (3d Cir. 2000) ("Under the extra-judicial source doctrine . . . alleged bias stemming from facts gleaned from the judicial proceeding will rarely be grounds for recusal."). In Liteky, the Supreme Court found no reason for the district court judge to disqualify himself because all the allegations of bias "occurred in the course of judicial proceedings, and neither (1) relied upon knowledge acquired outside such proceedings nor (2) displayed deep-seated and unequivocal antagonism that would render fair judgment impossible." 510 U.S. at 556. Moreover, the Court in Liteky recognized that knowledge acquired in prior proceedings involving the same party is not considered an extrajudicial source of bias because "[i]t has long been regarded as normal and proper for a judge to sit in the same case upon its remand, and to sit in successive trials involving the same defendant." Id. at 551.

The standard laid out by the Supreme Court in Liteky for recusal under the pervasive bias exception to the extrajudicial source doctrine is exceedingly high:

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings . . . do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.  Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.  They <u>may</u> do so if they reveal an opinion that derives from an extrajudicial source; and they <u>will</u> do so if they reveal <u>such a high degree of favoritism or antagonism as to make fair judgment impossible.</u>

510 U.S. at 555 (final emphasis added); <u>see also</u> <u>In re Shimer</u>, 215 F. App'x 149, 150 (3d Cir. 2007) (nonprecedential); <u>In re Cmty. Bank of N. Va.</u>, 418 F.3d 277, 319-20 (3d Cir. 2005).  As noted in <u>Antar</u>, "[b]iases stemming from facts gleaned during judicial proceedings themselves must be particularly strong in order to merit recusal."  53 F.3d at 574, <u>cited in</u> <u>In re Prudential</u>, 148 F.3d at 343.  "A favorable or unfavorable predisposition can . . . deserve to be characterized as 'bias' or 'prejudice' [when] even though it springs from the facts adduced or the events occurring at trial, it is so extreme as to display clear inability to render fair judgment."  <u>Antar</u>, 53 F.3d 574 (alterations in original) (quoting <u>Liteky</u>, 510 U.S. at 551).  "[T]he pejorative connotation of the terms 'bias' and 'prejudice' demands that they be applied only to judicial predispositions that go beyond what is normal and acceptable."  <u>Liteky</u>, 510 U.S. at 552; <u>see, e.g.</u>, <u>Berger v. United States</u>, 255 U.S. 22, 41 (1921) (the district judge was recused for exhibiting a predisposition beyond what was acceptable by stating, "One must have a very judicial mind, indeed, not [to be] prejudiced against the German Americans in this country. Their hearts are reeking with disloyalty."); <u>Antar</u>, 53 F.3d at 573-76 (the district judge displayed a high degree of antagonism warranting recusal by telling the parties that his "object in this case from day one has always been to get back to the public that which was taken from it as a result of the fraudulent activities of this defendant and others" (emphasis omitted)).

However, as the Third Circuit noted in <u>Antar</u>, the pervasive bias exception to the extrajudicial source doctrine has been construed narrowly in post-<u>Liteky</u> cases.  53 F.3d at 574-75 (discussing cases from the Tenth and Seventh circuits holding that recusal was not warranted when the judges displayed impatience, admonished defendants, and made vague references to possible predispositions); <u>see also</u> <u>In re Cmty. Bank of N. Va.</u>, 418 F.3d at 320 (finding that recusal was not warranted where all incidents alleging bias occurred during the course of proceedings and the plaintiffs had not shown that the district court "exercised 'such a high degree of favoritism or antagonism as to make fair judgment impossible'" (quoting <u>Liteky</u>, 510 U.S. at 555)); <u>Securacomm</u>, 224 F.3d at 278 (finding that recusal was not warranted where all articulated bases for recusal stem from judicial proceedings and "none of the[] purported bases for recusal manifest the type of deep-seated bias that would render fair judgment impossible").  Importantly, the judge's "expressions of impatience, dissatisfaction, annoyance, and even anger" at trial do not establish bias or partiality according to the Supreme Court.  <u>Liteky</u>, 510 U.S. at 555-56.  "A judge's ordinary efforts at courtroom administration–even a stern and short-tempered judge's ordinary efforts at courtroom administration–remain immune."  <u>Id.</u> at 556.

**C.    Discussion**

Plaintiffs' Motion for Recusal does not present any facts supporting an extrajudicial source of impartiality; it fails to cite anything other than the undersigned's comments at oral argument in this case.  Therefore, under <u>Liteky</u>'s pervasive bias exception to the extrajudicial source doctrine, recusal will only be warranted if the undersigned's comments reveal such a high degree of deep-seated and unequivocal antagonism as to make fair judgment impossible.  In this

case, there is nothing to indicate that the undersigned's comments at oral argument were based on such improper considerations or would render fair judgment in this proceeding impossible.

Considering the argument as a whole, the Court's comments were balanced. The Court refused Defendants' repeated requests that the Complaint be dismissed, and stated repeatedly that the Court had to assume the Plaintiffs' allegations were true and could not grant Defendants' motions without allowing for discovery. Because the Court stated (a) that a number of the allegations did not meet the plausibility standard of pleading, (b) that there were numerous allegations of fraud in the briefs, but none in the Complaint, and (c) that there was some likelihood that Plaintiffs' attorney would be a witness at the trial, the Court decided that giving Plaintiffs the opportunity to file an amended complaint would be preferable to dismissal. There was also a dispute about the statute of limitations, and the Court suggested that the amended complaint contain factual allegations to support of Plaintiffs' view that the Complaint had been timely filed. The undersigned had no involvement in the underlying action which had been filed in this district and was assigned to the Honorable John R. Padova, with settlement involvement by the Honorable Lowell A. Reed, Jr.

All of the Court's comments were in the context of Defendants' motions and were directed to the merits of the case. Plaintiffs contend that this Court has formed a "fixed view of the case," largely arising from the comment of the undersigned that people should be held accountable for documents they sign. Whether or not the Court was legally correct, the Court did not express any "fixed view" about the case or about Plaintiffs' claims. None of Plaintiffs' purported bases for recusal manifests the type of deep-seated bias that would render fair judgment impossible. The Court's comments about "holding people to what they sign"

supported the Court's suggestion that Plaintiffs file a more factually detailed amended complaint to show why the contract that Plaintiffs signed was invalid. Such an urging does not show that the Court could not possibly render fair judgment, and nothing in the remark indicates to the reasonable observer that the Court was unable or unwilling to carry out its responsibilities impartially. Moreover, the undersigned has no knowledge of any of the parties involved in this case, which had been initiated in New Jersey state court and was removed to the United States District Court for the District of New Jersey, and then transferred to this Court.

Plaintiffs' recusal motion is based on the undersigned's admonishment of counsel, the undersigned's alleged "fixed view" of the case, and the undersigned's alleged bias stemming from questions and statements put to counsel at oral argument. As in <u>Liteky</u>, 510 U.S. at 556, all of these grounds are inadequate under the controlling standards for recusal: the comments of the Court in question consist of routine trial administration efforts and ordinary admonishment and urging of counsel. All occurred in the course of judicial proceedings, and the Court neither relied upon knowledge acquired outside such proceedings nor displayed deep-seated and unequivocal antagonism that would render fair judgment impossible.

For these reasons, the Plaintiffs' Motion for Recusal will be denied.

**III.     Disposition of the Complaint**

**A.     Plaintiff's Complaint**

As noted, plaintiffs' Complaint alleges four counts, two against the law firm Defendants, and two against Hanover. Plaintiffs' claims against the law firm Defendants—one "tort claim" and one "contract claim"—essentially allege legal malpractice. As to their "tort claim," Plaintiffs allege that "[t]law firm defendants had an attorney client relationship with plaintiffs" and those

defendants "knowingly, recklessly, or negligently or otherwise advised plaintiffs to settle on terms that effectively operated as suicide for plaintiffs, and that advice fell below the require standard of care." (Compl. ¶¶ 25, 26.) Furthermore, "[t]he law firm defendants knowingly, recklessly, or negligently or otherwise engaged in acts that protected the financial well being of Hanover Insurance who paid their fees and [that were] detrimental to plaintiffs in the Underlying Action to such a degree that they breached their fiduciary duty to plaintiffs." (Compl ¶ 27.) As to Plaintiffs' "contract claim," Plaintiffs simply incorporate all preceding paragraphs of the Complaint and state, "The law firm defendants thereby breached their contractual duty to plaintiffs." (Compl. ¶ 30.)

With respect to Hanover, Plaintiffs allege bad faith and breach of contract. As to their bad-faith claim, Plaintiffs allege that "[d]efendant Hanover breached its duty and engaged in bad faith insurance practices by (1) issuing an equivocal reservation of rights letter rather than full and unequivocal coverage and defense; (2) by using its reservation as an instrumentality of coercion and duress against plaintiffs; and (3) placing its profit motivation exclusively and blindly ahead of its insureds' business rights and benefit." (Compl. ¶ 20.) In addition, Plaintiffs allege that "Hanover Insurance conspired and agreed with the law firm defendants to cause plaintiffs ro go out of business so as to minimize its financial exposure in the Underlying Action," and that "Hanover committed its acts knowingly, willfully and maliciously." (Compl. ¶ 21.) As to their breach of contract claim, plaintiffs simply incorporate all preceding paragraphs and allege "Hanover breached its insurance contract with plaintiffs and otherwise breached the covenant of good faith and fair dealing implied in the contract." (Compl. ¶ 23.)

As noted above, after oral argument regarding Defendants' Motions to Dismiss and for Judgment on the Pleadings and/or Summary Judgment, the Court ordered Plaintiffs to file an amended complaint under the authority of <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), principally (but not exclusively) because of the implausibility of a number of the allegations in the Complaint. The Court's Order informed Plaintiffs that failure to submit an amended complaint would result in dismissal. To date, Plaintiffs have failed to comply with the Court's Order. This Memorandum will detail the reasons why the Court's Order requiring an amended complaint was an appropriate exercise of the Court's discretion. For the reasons set forth below, the Court will require Plaintiffs to show cause why the Court should not dismiss Plaintiffs' Complaint because of their refusal to file an amended complaint.

**B.**     <u>**Discussion**</u>

    **1.**     **The Court has the authority to order an amended complaint.**

In order to satisfy the general pleading requirements of Federal Rule of Civil Procedure 8(a)(2), the plaintiff must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." In light of <u>Twombly</u>, a complaint is not well pleaded if it presents only "labels and conclusions, and a formulaic recitation of the elements of a cause of action." <u>Phillips v. Cty. of Allegheny</u>, 515 F.3d 224, 231 (3d Cir. 2008) (quoting <u>Twombly</u>, 550 U.S. at 553). While <u>Twombly</u> affirmed that a complaint does not need to plead detailed factual allegations, 550 U.S. at 555, the plaintiff does need to " plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009); <u>see</u> <u>Phillips</u>, 515 F.3d at 232 (a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level"

(alteration in original) (quoting Twombly, 550 U.S. at 555)). In Iqbal, the Supreme Court affirmed that the factual allegations of a complaint must "state[] and plausible claim for relief," and that "where the well-pleaded facts [of a complaint] do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" 129 S. Ct. at 1950 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)). Additionally, Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

A district court judge has the authority to require a plaintiff to file an amended complaint if the original complaint is not well pleaded. See Jones v. N.J. Bar Ass'n, 242 F. App'x 793, 793-94 (3d Cir. 2007) (nonprecedential); Azubuko v. Bell Nat'l Org., 243 F. App'x 728, 729 (3d Cir. 2007) (nonprecedential); see also Kauffman v. Moss, 420 F.2d 1270, 1276 (3d Cir. 1970); Schaedler v. Reading Eagle Publ'n, Inc., 370 F.2d 795, 799 (3d Cir. 1967). The decision to require as well as allow a party to amend his complaint rests within the sound discretion of the district court. See Howze v. Jones & Laughlin Steel Corp., 750 F.2d 1208, 1212 (3d Cir. 1984).

The Court's authority to order an amended complaint was not affected by Hanover filing an answer to the Complaint and thereafter filing a Motion for Judgment on the Pleadings and/or Motion for Summary Judgment. There are two Rules of Civil Procedure which clearly give the Court authority to require an amended complaint. Federal Rule of Civil Procedure 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires." The rule does not limit the filing of an amended complaint to a party's motion, and there is nothing in

the rule to preclude the Court from <u>sua</u> <u>sponte</u> requiring an amended complaint. This authority is

also expressed in Rule 16(c)(2)(B):

> At any pretrial conference, the court may consider and take appropriate action
> on the following matters:
> . . . .
> (B) amending the pleadings, if necessary or desirable; . . . .

Further, Rule 16(f)(1)(C) gives the court the power to sanction a party which "fails to

obey a scheduling or other pretrial order."

A court's decision to allow an amended complaint frequently follows denial of a Rule 12

motion to dismiss, and an order requiring an amended complaint is less frequent once a party has

answered and has moved for judgment on the pleadings and/or for summary judgment. In this

case, however, there was an important need to maintain one complaint for the claims against all

Defendants, and therefore the Court, after determining Defendants' Motions should be denied,

required an amended complaint as to all Defendants. Proceeding to trial, or determining

summary judgment, with two different complaints, one for the law firm Defendants and one for

Hanover, would bring confusion and unnecessary complexity to appropriate determinations of

pretrial motions or the jury's consideration at a trial. In this case, it was within this Court's

discretion to order that Plaintiffs amend their Complaint as to both Defendants.

### 2. The Court properly ordered an amended complaint because the original Complaint did not comply with pleading standards.

As mentioned in the May 26, 2010 Order, the Court directed Plaintiffs to file an amended

complaint because of procedural and substantive defects in the present Complaint. This is not a

case in which "the material deficiencies in the complaint stem from nothing more than inartful

pleading." Menkowitz v. Pottstown Mem'l Med. Ctr., 154 F.3d 113, 124 (3d Cir. 1998).

Plaintiffs' Complaint does have some "technical" defects. The causes of action are confusing.

Although there are four different counts, Plaintiffs have erroneously labeled the first two counts,

"Count One," and the last two counts, "Count Two." In addition, Plaintiffs have incorporated all

allegations of every count into every succeeding count. Although Plaintiffs have two separate

legal claims against Hanover, one for bad faith and one for breach of contract, Plaintiffs have

incorporated all of the allegations, including those alleging bad faith, into the claim against

Hanover for breach of contract.

Similarly, Plaintiffs have taken all of their allegations in the Complaint, including those

against the insurance company and also against the law firm Defendants for professional

malpractice, and incorporated them into the separate count they have made against the law firm

Defendants for breach of contract. This careless incorporation of allegations results in blending

together tort claims and contract claims, which can only lead to confusion when the time comes

for motions for summary judgment, pretrial motions, and most importantly, charging the jury.

Thus, it was appropriate for the Court to require Plaintiffs to amend their Complaint from a case-

management perspective. Cf. Exxon Shipping Co. v. Baker, 128 S. Ct. 2605, 2616-17 (2008)

(highlighting the district court's discretion to adopt a case-management technique at the pre-trial

level).

In addition and more substantively, as revealed by the briefing that took place on the

Defendants' Motions, this Court determined that the issues raised by Plaintiffs required

sharpening by a more specific pleading. See Iqbal, 129 S. Ct. at 1949 (explaining that

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

Aside from the inadequacies of the pleadings under <u>Twombly</u> and <u>Iqbal</u>, Plaintiffs had indicated in their briefing in opposition to the Defendants' Motions that Defendants had committed fraud.  (<u>See</u> Tr. 17:5-9.)  However, there is no allegation of fraud in the Complaint itself.  The Court, therefore, was concerned that Plaintiffs intended to proceed on a theory of fraud against Defendants, but had failed to plead to fraud with particularity as required under Rule 9(b).  It would have been unfair to Defendants to allow Plaintiffs to proceed on a fraud theory when they had not met their particularized pleading obligations under Rule 9(b).

Furthermore, amendment of the Complaint was also appropriate to clarify issues and to provide more factual background to overcome the Court's conclusion that a number of the claims alleged were "implausible" in view of the pleading requirements under <u>Twombly</u>, 550 U.S. at 570.  More specifically, the May 26, 2010 Order concluded that Plaintiffs' Complaint did not plead enough facts to demonstrate plausibly why Hanover and the law firm Defendants, as alleged, would have a motive or reason to conspire together to harm their insured/client, Plaintiffs.  Such conduct would be surely unethical and possibly criminal.  <u>See</u> <u>Twombly</u>, 550 U.S. at 565 n.10 (noting that plaintiff's pleadings were insufficient because of the absence of an independent allegation of an actual agreement to support plaintiff's allegations of conspiracy).

Under Rule 9(b), "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  However, there is not even a general allegation of any of these factors, even though Plaintiffs' claim must rest heavily on some aspect of Defendants' intent or

motive. Furthermore, the Court noted that the Settlement Agreement entered into in the underlying litigation and signed on behalf of Plaintiffs, acknowledges that Plaintiffs received independent legal advice and includes other terms contrary to the conclusory allegations of the present Complaint that Defendants conspired and that Hanover acted in bad faith. Yet, there are no facts explaining these contradictions.

### 3. The Court will require Plaintiffs to show cause why the Complaint should not be dismissed.

There is abundant authority within the Third Circuit for a district court to dismiss a case when a plaintiff refuses or fails to file an amended complaint, as ordered by the court. For instance, in In re Westinghouse Securities Litigation, 90 F.3d 696 (3d Cir. 1996), the district court dismissed a complaint for failure to plead in accordance with Rule 8, but gave the plaintiffs leave to replead. The plaintiffs filed a "Notice of Intention to Stand on Second Consolidated Amended Class Action Complaint," in which they informed the district court that they would not be amending the complaint; rather, plaintiffs stated that they were going to "stand" on the complaint and seek immediate appellate review. The district court then dismissed the plaintiffs' remaining claims with prejudice and closed the case. Id. at 701–02.

On appeal, the plaintiffs argued that the district court had improperly dismissed their claims under Rule 8 and had established improperly high requirements for pleadings in securities cases. On appeal, then-Judge Alito noted that the district court's decision to dismiss the plaintiffs' claims under Rule 8 would be reviewed for abuse of discretion, and upheld the district court's dismissal of the plaintiffs' claims because of their refusal to file the amended complaint as allowed by the court, as "[t]he district court expressly warned plaintiffs that failure to replead

the remaining claims in compliance with Rule 8 would result in the dismissal of these claims." Id. at 704; see also Yourish v. Cal. Amplifier, 191 F.3d 983 (9th Cir. 1999) (upholding a district court's dismissal of a complaint with prejudice when the plaintiff fails to file an amended complaint required by the court).

Similarly, in Azubuko v. Bell National Org., 243 F. App'x at 728, the plaintiff filed a complaint that was found to be deficient for failing to comply with the pleading requirements. After directing the plaintiff to file an amended complaint by the deadline, which the plaintiff failed to meet, Judge Kugler of the District of New Jersey dismissed the complaint, and subsequently denied the plaintiff's motion for reconsideration and motion to reopen the case. The plaintiff appealed, and a panel of the Third Circuit affirmed. A similar result was reached in Jones v. New Jersey Bar Ass'n, 242 F. App'x at 793-94.

Notwithstanding these recent nonprecedential decisions affirming a district court's dismissal of a complaint when the plaintiff fails to satisfy a district court order requiring an amended complaint, which is also the unique factual situation in this case, district courts in the Third Circuit have been overturned for dismissing complaints without a thorough review of the factors set forth in Poulis v. State Farm Fire & Casualty Co., 747 F.2d 863 (3d Cir. 1984). See, e.g., Hernandez v. Palakovich, 293 F. App'x 890 (3d Cir. 2008) (nonprecedential). These cases most frequently arise under Federal Rule of Civil Procedure 41(b). The Poulis factors include:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

<u>Poulis</u>, 747 F.2d at 868.

In the nonprecedential opinions in <u>Azubuko</u> and <u>Jones</u>, when the plaintiff had failed to obey a court order to file an amended complaint, the district court was justified in dismissing the complaint without considering the <u>Poulis</u> factors.  If <u>Azubuko</u> and <u>Jones</u> had been precedential cases, this Court would dismiss the Complaint at this time.  However, in considering the <u>Poulis</u> factors, the Court cannot say from the present record whether they are satisfied, even though the Court advised Plaintiffs that failure to file an amended complaint would result in dismissal with prejudice.  In addition, the Court wishes to isolate the decision to require Plaintiffs to file an amended complaint from Plaintiffs' Motion for Recusal, which will be denied.

For these reasons, the Court will require Plaintiffs, within ten days, to file a memorandum to show cause why the Complaint should not be dismissed with prejudice.  Plaintiffs may attach to their memorandum factual support and/or a proposed amended complaint.  The memorandum may further state Plaintiffs' reasons for not filing an amended complaint or any other matters they wish to bring to the Court's attention, and Plaintiffs may state they stand on their original Complaint.  Defendants will be given an opportunity to respond within seven days.  The Court will then determine what action should be taken.

An appropriate Order follows.

O:\CIVIL 09-10\10-858 Delalla v. Hanover\Delalla v. Hanover - Mem re recusal and amending compl.wpd